It is alleged that the schooner entered the harbor under too great a press of canvass. But the testimony clearly establishes that she carried only the usual and necessary sail. Her speed, after rounding the point, is said to have been about three miles an hour.

It is urged that she should, when she discovered the Ocean Spray, have let go her anchor, but the experts who have been examined, deny that this would have been proper or expedient. The bottom of the strait was treacherous, the passage narrow, and she would probably not have been brought up by her anchor, until chain enough had been paid out to expose her to the risk of being driven on shore by the ebb tide. The vessel was not seen by the schooner, until she had approached within a hundred yards; had they exhibited lights, they would have been discovered at twice that distance. It does not lie in their mouths to urge that when the collision had been rendered imminent, if not inevitable, by their own fault, the other vessel did not, in the emergency, adopt the very best course, or that which subsequent reflection may suggest as most expedient. For even an error in judgment, under such circumstances, the master of the schooner is not responsible, provided he has exercised reasonable skill and diligence. The only point on which I have felt doubt, is whether the night was not sufficiently clear to permit the schooner to discover the vessels at anchor, as soon as she rounded the point, and at as great a distance as if they had carried lights. .

The witnesses for the libellants declare that the moon was shining brightly, obscured only by a slight haze, and that it was sufficiently light to distinguish objects at a distance much greater than that from the point to the bight where the vessels were moored.

On the other hand, the master, mate, and seamen on board the schooner, swear that they kept a vigilant look-out and that the vessels were not seen until within 100 yards. If the witnesses on either side are deemed equally worthy of credit, the positive testimony that the vessels were not seen by a vigilant look-out, is entitled to more weight than the testimony of those who state that, in their opinion, they could or should have been seen.

There are some circumstances which corroborate the testimony of the respondent witnesses. The sinuous and difficult nature of the navigation, the narrowness of the channel, and the probability that, if well known to the master, that other vessels might be in his way, render it extremely improbable that in entering the harbor, he would not, for his own safety, have maintained a vigilant look-out. If he did so, he has done all that his duty required.

It is admitted that, as shown by the almanac, the moon, at the time of the collision, had passed the meridian, and was about five hours above the horizon. So far as I am able to judge, the effect of this must have been to cause Bodega Head to project to the eastward over the water, a shadow, in which vessels moored near its base would be enveloped. They would thus, to a vessel entering the harbor, be not only obscured by the shadow of the bluff, but with its dark side for a background, would be less easily discernible than if on a darker night, their hulls and spars had been brought into relief by a sky or horizon behind them.

If these views be just, it results that the libellants have not shown that the accident was due to the fault or negligence of the schooner; nor have they repelled the presumption that it was caused by their own neglect of a positive requirement of the law. The libel must, therefore, be dismissed.

LAREDO (WATERBURY v.). See Case No. 17,252.

## Case No. 8,088.

### L'ARINA v. The EXCHANGE.

[Bee, 198.] [1]

District Court, D. South Carolina. July, 1803.

SEAMEN'S WAGES — NOMINAL MASTER — SUM AGREED TO BE PAID ON DISCHARGE.

A person hired for a particular purpose as nominal captain is entitled to wages agreed upon with the real captain, and so far the vessel and owners are bound. But not for a further sum in case of discharge.

[Cited in Thomas v. Osborn, 19 How. (60 U. S.) 45; The Dubuque, Case No. 4,110; Peterson v. The Nellie and Annie, 37 Fed. 218.]

At a summary hearing of this case, a plea to the jurisdiction of the court was urged, because the actor being master of the vessel could not sue in the admiralty or make her liable for his wages, his remedy being against the owners only. It appeared, in evidence that the actor was merely called master of the brig, but never was considered so, or acted as such, except by lending his name to clear the vessel at the Havanna. An agreement was produced between him and Manwaring, the real captain, that he should receive fifty dollars per month, to proceed to Charleston, and return to the Havanna; unless he should be discharged, or the voyage should be altered: in either case he was to receive 200 dollars, over and above his wages.

In considering the case, THE COURT decided that the actor never was captain in fact, and therefore not barred from suing here. That the agreement for monthly wages was binding on the owners; and the vessel liable, as far as that amount. That the words "unless discharged" gave Manwaring a clear right to discharge him; and that by doing so, Manwaring became personally lia-

---

[1] [Reported by Hon. Thomas Bee, District Judge.]

ble, at common law, for the said sum of 200 dollars. That the owners were in no manner bound for the same.

THE COURT adjudged accordingly, that the brig was liable to the amount agreed upon as monthly wages; with costs.

[NOTE. It was subsequently decided in the suit brought by the plaintiff against Manwaring to recover the $200 that the matter was a subject for common-law jurisdiction, and could not properly be brought in admiralty. Case No. 8,089.]

## Case No. 8,089.

### L'ARINA v. MANWARING.

[Bee, 199.] [1]

District Court, D. South Carolina. July, 1803.

ADMIRALTY — JURISDICTION — ACTION FOR SUM AGREED TO BE PAID ON DISCHARGE— SEAMEN'S WAGES.

An agreement by the captain of a vessel to pay wages is sueable in the admiralty. But another stipulation in the same contract to pay a sum of money, if the voyage should be altered or discontinued, must be enforced at common law.

[Cited in Plummer v. Webb, Case No. 11,233; Cox v. Murray, Id. 3,304; Grant v. Poillon, 20 How. (61 U. S.) 168; Peck v. Laughlin, Case No. 10,890.]

This is a suit for the recovery of 200 dollars, under an agreement entered into by defendant at the Havanna on the 1st of May last. The agreement consisted of two parts: 1st. To allow the actor monthly wages, at the rate of 50 dollars per month, and maintenance on board the brig Exchange, as well on shore. 2d. That if the voyage should be changed, or the captain should not return to the Havanna, then to pay the actor 200 dollars over and above his said monthly pay.

Before BEE, District Judge.

Suit was brought against the brig about ten days ago, when the court determined that the vessel and owners were liable for the monthly wages agreed upon; and for no more. This decision could not impair the right of the actor against the captain, under the agreement. Manwaring was no party to that suit: and the jurisdiction of the court as to him was not considered.

It is now contended that Captain Manwaring is liable in this court under this contract. That the contract is entire and cannot be divided. That it must be maritime in toto, or the reverse. This point has already been decided; for the former decree made the vessel liable for monthly wages, and dismissed the suit (as to her and the owners) for the remaining sum stipulated for in the agreement. [Case No. 8,088.]

The next question is, whether Manwaring may be sued personally in this court on the latter part of his contract. The law as laid down in Hopk. Works, 140, "that where the original cause of action is exclusively of admiralty, or common law jurisdiction, all incidental matters shall follow," is clear enough; but it can only apply to the parties in the original suit, and not to persons then out of the view of the court. Such is the case now. The former suit was brought by the actor against the vessel and owners. The present is between the same actor and the captain of the vessel, whose act was declared by the court 'not binding on the owners as to the sum of 200 dollars, over and above wages. That decree also declared that the question now under discussion was partly of admiralty, and partly of common law, jurisdiction; in which case the latter shall be preferred. Indeed, the petition in this case states that a suit at common law has been instituted; but that, the actor being a transient person, the defendant means to give bail, for the purpose of delay: which induces the application to this court.

It was contended that this court has jurisdiction, because, though the contract was on land, it contemplated a voyage performed, or to be performed. This will hold so far as relates to the payment of monthly wages, as well on board as on shore, and until the actor shall be discharged. But the stipulation to pay 200 dollars over and above these wages is, expressly, in case no voyage should be performed, or contemplated. This is a strong distinction between the two parts of the agreement; the latter of which is a contract on land, and only cognizable by the court of common law. Bills of lading, policies of insurance, and bottomry bonds, where the vessel is not hypothecated agreeably to the marine law, are all sueable at common law only. Yet these contracts are all more or less connected with a voyage. They give a title to sue the owners or master, but do not make the vessel liable; as she is in the case of seamen's wages.

I have considered the case fully, and have no hesitation in saying that, if I should assume jurisdiction, a prohibition would lie; and as there is no court where it could be immediately obtained, I shall at once decree that this suit be dismissed with costs.

## Case No. 8,090.

### The LARK.

[1 Gall. 55.] [1]

Circuit Court, D. Massachusetts. May Term, 1812.

SHIPPING—PUBLIC REGULATIONS—COASTING ACT.

"Foreign voyage," in the 8th section of the coasting act, 18th February, 1793, c. 8 [1 Stat. 308], means a voyage intended to some place within the jurisdiction of a foreign country, or at least without the territorial waters of the United States.

[See The Atlantic, Case No. 621.]

[Appeal from the district court of the United States for the district of Massachusetts.]

---

[1] [Reported by Hon. Thomas Bee, District Judge.]

[1] [Reported by John Gallison, Esq.]